UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
*Alexandria Division*

| | | |
|---|---|---|
| In the Matter of the Extradition of | ) | Case No. 1:20-mj-354 |
| Jean Guy Guillaume Etouman | ) | |

## **UNITED STATES' REPLY IN SUPPORT OF EXTRADITION**

The United States respectfully requests that the Court certify to the Secretary of State that Jean Guy Guillaume Etouman ("Etouman") can be extradited to France. An extradition hearing is currently scheduled for Tuesday, March 30, 2021 at 10:00 a.m. The United States' opening brief was filed on March 3, 2021, and Etouman filed his response on March 17, 2021. In his response, Etouman argues that the French statutes "are not covered by the treaty" and that there is not probable cause to believe Etouman committed the offenses for which extradition is sought. ECF No. 17 at 1. Neither of these arguments is persuasive, so the United States respectfully requests that the Court certify that Etouman can be extradited to France.

As the United States explained in its opening memorandum, the Court's review is limited to determining whether the five requirements to certify extradition are satisfied. *See* ECF No. 16 at 11–12. Etouman concedes that the first three requirements are met. *See* ECF No. 17 at 2. The only requirements that Etouman contests are whether the applicable treaty covers the crimes for which extradition is requested (*i.e.*, the requirement of "dual criminality") and whether sufficient evidence exists to support a finding of probable cause as to each offense for which extradition is sought. Because the United States previously detailed the facts of the offenses, *see* ECF No. 16 at 1–5, only facts relevant to responding to Etouman's response brief will be included here.

I.  Dual Criminality is Satisfied

France seeks Etouman's extradition based on his conviction *in absentia* for rape and theft. A court adjudicating the dual criminality prong can consider whether the alleged conduct is illegal

under the laws of the United States, the laws of the state where the fugitive is found, or the law of a preponderance of the states. *See Wright v. Henkel*, 190 U.S. 40, 60–61 (1903); *see also Zhenli Ye Gon v. Holt*, 774 F.3d 207, 214 n.3 (4th Cir. 2014) ("[S]tate laws, in addition to federal laws, should be examined for purposes of analyzing dual criminality."); *DeSilva v. DiLeonardi*, 125 F.3d 1110, 1114 (7th Cir. 1997); *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 918 (2d Cir. 1981); *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 (9th Cir. 1981); *Brauch v. Raiche*, 618 F.2d 843, 851 (1st Cir. 1980) ("[W]e need not analyze each of the [American] statutory provisions under which [the fugitive]'s acts might be deemed criminal; it is sufficient that there be one such comparable offense.").

This sweeping approach to the dual-criminality requirement is consistent with the principle that a court should liberally construe an extradition treaty to effectuate its purpose: the surrender of fugitives to the requesting country. *See Factor v. Laubenheimer*, 290 U.S. 276, 293, 303 (1933); *see also Martinez v. United States*, 828 F.3d 451, 463 (6th Cir. 2016) (en banc) ("The point of an extradition treaty after all is to facilitate extradition[.]"). Because extradition treaties should be "interpreted with a view to fulfil[l] our just obligations to other powers," *Grin v. Shine*, 187 U.S. 181, 184 (1902), the court "must approach challenges to extradition with a view toward finding the offense within the treaty," *McElvy v. Civiletti*, 523 F. Supp. 42, 48 (S.D. Fla. 1981). *See also, e.g.*, *In re Extradition of Nezirovic*, No. 7:12MC39, 2013 WL 5202420, at *5 (W.D. Va. Sept. 16, 2013) ("Treaties are construed liberally to favor the obligation to surrender fugitives.")

Etouman essentially argues that because, in his view, the elements of the offenses in France and the United States are not the same, the dual-criminality requirement is not satisfied. *See, e.g.*, ECF No. 17 at 4, 5 (providing tables of the elements of the crimes). But the Fourth Circuit has

2

rejected a "same elements test." *See Zhenli Ye Gon*, 774 F.3d at 217. And this approach is inconsistent with extradition jurisprudence.

As the Supreme Court noted in *Collins* v. *Loisel*, dual criminality is not a technical concept involving a comparison of the elements of the two countries' offenses:

> The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the *particular act* charged is criminal in both jurisdictions.

259 U.S. 309, 312 (1922) (emphasis added). Dual criminality is satisfied merely if the essential character of the crimes is the same. *See United States v. Knotek*, 925 F.3d 1118, 1131–32 (9th Cir. 2019) ("It is immaterial whether one country's law is broader than the other, so long as the essential character of the acts criminalized is the same." (internal marks and citations omitted)). More specifically, "in applying the dual criminality requirement" courts have considered not only the statutory text, but also "have looked towards the conduct of the accused to see if it falls within the proscription of American criminal law." *Lo Duca v. United States*, 93 F.3d 1100, 1111–12 (2d Cir. 1996); *see also, e.g.*, *Peters v. Egnor*, 888 F.2d 713, 719 (10th Cir. 1989); *Oen Yin-Choy v. Robinson*, 858 F.2d 1400, 1404–05 (9th Cir. 1988); *Shapiro v. Ferrandina*, 478 F.2d 894, 908 (2d Cir. 1973) (stating that dual criminality is satisfied if "the laws of both the requesting and the requested party appear to be directed to the same basic evil"); *In re Extradition of Pena-Bencosme*, 341 F. App'x 681, 684 (2d Cir. 2009) (dual criminality requirement satisfied if "the *conduct* of the accused … falls within the proscription of American criminal law") (emphasis in original, internal quotation marks and citations omitted).And differences in the instrumentalities or purposes of the

crime are not dispositive so long as the criminal statutes relate to the same general offense. *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir. 1995); *Peters*, 888 F.2d at 719.

In other words, offenses satisfy the dual-criminality requirement so long as they "punish the same basic evil." *Zhenli Ye Gon*, 774 F.3d at 217 (collecting cases). Thus, when considering whether the offenses at issue here are dually criminal in both the United States and France, the Court should examine the description of the alleged misconduct that France has provided in support of its request and decide whether that conduct would have been criminal if the fugitive had perpetrated it in the United States.

> A. The conduct underlying the extradition request for the rape offense is criminal in the United States.

Etouman's arguments regarding dual criminality for the French rape offense are unavailing for several reasons. First, Etouman does not contest that the conduct underlying the extradition request for rape is criminal under Virginia's rape statute, Va. Code § 18.2-61(A), which prohibits "ha[ving] sexual intercourse with a complaining witness" … when "such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation …; or (ii) through the use of the complaining witness's mental incapacity or physical helplessness." *Compare* ECF No. 17 at 3–4 *with* ECF No. 16 at 16. This failure is fatal to Etouman's arguments. Because the conduct underlying the extradition request for rape is criminal under "the laws of the state where [he was] found," the dual-criminality requirement is satisfied. *See Wright*, 190 U.S. at 60–61; *Zhenli Ye Gon*, 774 F.3d at 214; *Raiche*, 618 F.2d at 851 (noting that one sufficient offense satisfies the dual-criminality requirement).

Regardless, the conduct underlying the extradition request for rape is also criminal under the federal law punishing an individual who knowingly "renders another person unconscious and

4

thereby engages in a sexual act with that person[.]" 18 U.S.C. § 2241(b)(1). France's submissions explain that under Article 222-23 of the French Penal Code, "[a]ny act of sexual penetration, of whatever nature, committed on the person of others by violence, coercion, threat or surprise is rape"; and that under Article 222-24, when rape is "committed on a person whose particular vulnerability, due to his age, illness, infirmity, physical or mental impairment or a state of pregnancy, is apparent or known to the author," the offense is punishable with twenty years imprisonment. ECF No. 16-2 at 39.

The French submissions further explain that "surprise" within the meaning of Article 222-23 is defined "by the fact (among other cases) of obtaining sexual favors by abusing the difficulty of the victim to apprehend the real situation." *Id.* at 37. Surprise exists "when the victim was particularly vulnerable at the time of the facts and unable to consent." *Id.* Thus,

> surprise is also characterized when the act is performed while the victim is asleep or during a state of unconsciousness of the latter, linked to the excessive consumption of alcohol, drugs, or narcotic drugs, as soon as the victim's condition did not allow her to resist the acts which were imposed on her.

*Id.* Finally, the French submissions conclude that

> by taking advantage of his victim's state of drunkenness and *by provoking a state of artificial passivity by administering to her an annihilating product to impose acts of sexual penetration on her*, JGG ETOUMAN raped by surprise [the victim] whose consent was annihilated.

*Id.* (emphases added). Etouman appears to assert that dual criminality would be lacking under 18 U.S.C. § 2241(b) had he merely taken advantage of his victim's impaired state—rather than knowingly drugging her or rendering her unconscious. *Cf.* ECF No. 17 at 4. But that argument misses the mark in this case. Etouman's alleged conduct underlying the extradition request does include drugging the victim. There can be no question, therefore, that the conduct underlying the extradition request for rape is criminal under U.S. federal criminal law prohibiting knowingly

rendering a person unconscious before engaging in sexual acts with that person. And, as already mentioned, Etouman does not contest that Virginia law provides a substantial analog. In sum, French and American law punish the conduct underlying the extradition request—namely, engaging in sexual acts with a person whom the perpetrator has drugged and thus precluded from consenting.

      B.  The conduct underlying the French theft offense is criminal in the United States.

Etouman's arguments regarding the conduct underlying the French theft offense are similarly unavailing. The first federal law cited by the United States is 18 U.S.C. § 661. That statute punishes a person who "takes and carries away, with intent to steal or purloin, any personal property of another." 18 U.S.C. § 661. If the property has a value exceeding $1,000 or is taken from the person or another, the wrongdoer can be punished by up to five years' imprisonment. *Id.* Even if the property's value is less than $1,000 and the property is not taken from the person of another, the wrongdoer can be punished by "not more than one year"—*i.e.*, exactly one year—in prison. *Id.*

Etouman argues that 18 U.S.C. § 661 is inapposite because "the offense conduct would not constitute a felony under United States law" if the value of the property does not exceed $1,000. ECF No. 17 at 5.[1] Although Etouman's statement is true as far as it goes, *cf.* 18 U.S.C. § 3559(a)(1)–(5) (classifying felonies as punishable by more than one year), it misstates the requirements of the Treaty, which does not require the U.S. analog offense to be a felony. Rather,

---

[1] Etouman argues that "there is no evidence that Mr. Etouman engaged in conduct involving the theft of property valued at more than $1,000." ECF No. 17 at 5. This overstates the matter. As the French submissions make clear, Etouman stole his victim's residence card, passport, bank card, two cellphones, and 400 Francs in cash. ECF No. 16-2 at 31. The cumulative value of these stolen goods could exceed $1,000.

Article 2 of the Treaty provides that "[a]cts shall be extraditable if they are punished under the laws in both States by deprivation of liberty for a maximum of *at least one year* or by a more severe penalty." ECF No. 16-1 at 17 (emphasis added). The plain language of the Treaty thus specifies that acts punishable by a maximum of *exactly one year* are extraditable; if the Treaty required all acts to be felonies, it would have referred to acts punishable by "greater than one year" or by "more than one year." The Senate Report providing a technical analysis of the Treaty confirms this interpretation. The report states that the Treaty covers acts punishable by "a term of *one year* or more." Exh. A at 13.[2] Thus, if a person "takes and carries away … any personal property of another," regardless of the value of the property, he can be punished by a maximum of

---

[2] The original Report was more than 250 pages long, so Counsel for the United States included the first nine pages of general information and the fifteen pages related specifically to the Treaty. This process did create odd numbering with the Report's existing page numbers. An HTML text version of the Senate Report is available at https://www.govinfo.gov/content/pkg/CRPT-105erpt23/html/CRPT-105erpt23.htm. Counsel has also included a screenshot of the relevant paragraph for the Court's ease of reference.

> ARTICLE 2—EXTRADITABLE OFFENSES
>
> This article contains the basic guidelines for determining what constitutes an extraditable offense. The Treaty, like the recent United States extradition treaties with Costa Rica, Ireland, Italy, Jamaica, Jordan, Sweden (Supplementary Convention), and Thailand, does not list the offenses for which extradition may be granted. Instead, paragraph 1 permits extradition for any offense punishable under the laws of both Contracting States by deprivation of liberty (i.e., imprisonment or other form of detention) for a term of one year or more, or by a more severe penalty such as capital punishment (under the laws of the United States). This "dual criminality" approach to defining extraditable offenses obviates the need to renegotiate the Treaty or to supplement it if both Contracting States pass laws dealing with a new type of criminal activity. It also avoids problems resulting if a treaty list of extraditable offenses inadvertently fails to cover a type of criminal activity punishable in both nations.

exactly one-year imprisonment. The conduct underlying the French theft offense is therefore criminal under 18 U.S.C. § 661. *See* ECF 16-2 at 40 (French Penal Code defining theft).³

Etouman also takes issue with the United States' reliance on 18 U.S.C. § 2111, which prohibits the taking, or attempting to take, from the person of another anything of value "by force or violence." Etouman argues that this is a federal robbery statute and that "[r]obbery is not the offense Mr. Etouman faces in France." ECF No. 17 at 6. This argument fails, as the offense conduct, not the name of the crime, is relevant. *See Collins*, 259 U.S. at 312. Etouman continues, however, that § 2111 "requires that the taking (or attempt to take) be accomplished by force or intimidation. It does not criminalize the taking of property from a vulnerable or incapacitated person as the French statute does." ECF No. 17 at 6. Yet this argument ignores that Etouman used force—*i.e.*, drugging the victim—to steal the victim's personal property. Because that conduct would satisfy § 2111, the statute is substantially analogous to the French theft statute.

Finally, Etouman appears to argue that the conduct underlying the extradition request is not criminal under Virginia law because Va. Code § 18.2-95 "prohibits larceny from the person of another" and does not also require that the perpetrator "accomplished [his] theft because the complainant was incapacitated." ECF No. 17 at 6–7. The relevant inquiry, however, is whether the conduct of the accused "falls within the proscription of American criminal law." *Lo Duca*, 93 F.3d

---

³ Moreover, the Treaty provides that, "[i]f the extradition request concerns distinct acts, … and if some of the acts do not fulfill" the requirement to be punishable by deprivation of liberty for a maximum of at least one year, "the Requested State shall nonetheless grant extradition based upon such acts." *See* ECF No. 16-1 at 18 (Art. 2, ¶ 5). Etouman is indisputably extraditable for the rape offense—at the very least because of the substantially analogous Virginia statute. Accordingly, even if the Treaty Article 2(1) required the lead offense to carry a potential custodial penalty exceeding one year, so long as the Court finds that Etouman is extraditable for rape, and that the conduct underlying the extradition request for theft is criminal under an eligible statute such as 18 U.S.C. § 661, Treaty Article 2(5) provides that he is also extraditable for the theft offense.

at 1112. The Virginia statute criminalizes taking "from the person of another of money or other things of value of $5 or more[.]" Va. Code § 18.2-95(i). The facts underlying the extradition request establish that Etouman went to the victim's home, drugged her, and then stole the aforementioned personal property from her. This conduct is criminal under Virginia law. *See, e.g.*, *Collins*, 259 U.S. at 312; *Zhenli Ye Gon*, 774 F.3ed at 217 (explaining that dual criminality "does not require that the offenses contain identical elements"). Accordingly, because each of the three statutes referred to by the United States aims to punish the same basic evil encompassed by the French theft statute, Etouman's theft conviction is an extraditable offense. And, so long as the Court finds that one of these statutes is substantially analogous, the dual-criminality requirement is satisfied.

II.     France's submissions establish probable cause

Etouman next argues that the Court should not certify to the Secretary of State that he is extraditable because, he claims, there is not sufficient evidence to support a finding of probable cause as to each offense for which extradition is sought.[4] Etouman argues that there is not probable cause to believe that Etouman's sexual act with his victim "occurred by violence, coercion, threat or surprise." ECF No. 17 at 11. His argument relies on two assertions. First, he notes that he "made no statements that the sexual act was accomplished by violence, coercion, threat or surprise." *Id.* Second, he maintains that the GHB (the "date rape drug") found in the vodka bottle is not

---

[4] Etouman impliedly concedes that France's submissions establish probable cause as to the theft offense. *See* ECF No. 17 at 11–12. Indeed, according to the French submissions, "Etouman made no secret of stealing [from] the victim." ECF No. 16-2 at 36.

9

persuasive because the bottle had been in the victim's "possession long before meeting Mr. Etouman." *Id.* Neither argument should persuade the Court.

First, ample evidence supports finding probable cause that Etouman's sexual act with his victim occurred by violence, coercion, threat, or surprise. As the United States explained above, French law interprets "surprise" to include performing the sexual act "while the victim is asleep or during a state of unconsciousness." ECF No. 16-2 at 39. Etouman's brother, Paul, told French police that Etouman had told him that the victim had fallen asleep *before* the sexual intercourse occurred. *Id.* at 35. Paul's testimony and the testimony of Etouman's friend, Benjamin Chelly, placed Etouman at the nightclub with the victim on the night of the crime, *id.*, which was corroborated by the credit card charges made by all three men that night, *id.* at 36.

And the victim told police that she had had vodka before going to the nightclub and five to six beers while at the nightclub. *Id.* at 33. She explained that she woke up without her pants or underwear on but said that she had fallen asleep fully clothed. *Id.* She also told French police that she did not remember having sex the night before. *Id.*

Etouman also admitted to being at the victim's apartment and to having sex with her. *Id* at 34. Moreover, Etouman's spermatozoa was found on the victim's bed, underwear, pants, and shirt, as well as in samples taken from the victim's vagina and anus. *Id.* at 33.[5] The French submissions suggest that Etouman explained to French police that his victim "was particularly amorphous during the sexual acts" and that she "had staggered at the exit of the nightclub, being in a state of

---

[5] Given this evidence, the United States maintains that there is no reasonable argument that there was not "an act of sexual penetration" "on another person." *Cf.* ECF No. 17 at 12 ("Assuming, without agreeing, that the government has shown probable cause of the first two elements[.]" Indeed, after making his assumption, Etouman admits that he told the investigators about the sexual "encounter" with the victim but contended that it was "consensual." *Id.*

alcoholic intoxication[.]" *Id.* at 38. Etouman also left a note telling his victim to take an emergency contraceptive pill. *Id.* at 33. And, when confronted by police about the GHB, Etouman first tried to frame his friend, Chelly, before eventually retracting the claim. *Id.* at 34, 36. Investigating officials thought that Etouman's varied statement about the night evidenced "bad faith" and "his desire to hide the truth." *Id.* at 36. All this evidence is more than enough to establish probable cause to believe that Etouman's sexual penetration of his victim occurred by surprise.

  Second, the vodka bottle further incriminates Etouman. Etouman's victim told police that "she had long held the bottle of suspicious vodka," but she also informed the police that "before going to [Le Saint] on the night of the facts, she had been drinking it with her friends." *Id.* at 36. According to the victim, none of her friends experienced negative side effects. *Id.* But, if the vodka had been contaminated with the GHB *before* the victim and her friends went to the club, it would be likely that they would all suffer some side effect. Because only the victim suffered memory loss the night of the events, *see id.* at 33, the evidence submitted by France tends to show that the GHB was administered sometime after the victim and her friends left for the nightclub. Taken together, this evidence is more than sufficient to establish probable cause that Etouman raped the victim.

11

## Conclusion

For the foregoing reasons, and the reasons more fully laid out in its memorandum on extradition, ECF No. 16, the United States requests that the Court certify to the Secretary of State that Jean Guy Guillaume Etouman can be extradited to France.

Dated: March 23, 2021

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:

_____/s/_____
Nicholas J. Schilling, Jr.
Special Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
nicholas.schilling@usdoj.gov

**Certificate of Service**

I certify that on March 23, 2021, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

By:         /s/
Nicholas J. Schilling, Jr.
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:     (703) 299-3980
Email:   nicholas.schilling@usdoj.gov